UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAREY LICENSING, INC. And CAREY INTERNATIONAL, INC.,

Plaintiffs,

v.

ALEXANDER SANDLER, et al.,

Defendants.

CASE NO. C05-1337JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on the ex parte motion of Plaintiffs Carey Licensing, Inc. and Carey International, Inc. (collectively "Carey") for a temporary restraining order (Dkt. # 3). As outlined below in the court's findings of facts and conclusions of law, the court GRANTS Plaintiffs' motion and orders the parties to appear on Wednesday, August 10, 2005 at 1:00 p.m. for a hearing on Plaintiffs' motion for preliminary injunction.

## II. FINDINGS OF FACT

1. Carey is a Delaware corporation with a principal place of business in Washington, D.C.

2. Carey operates a worldwide limousine transportation business in 65 countries and over 500 cities throughout the world, including Seattle.

ORDER – 1

3. Carey is the owner of United States Trademark Nos. 1,107,533 and 1,375,117. Both trademarks register the service mark and trade name CAREY®.

4. Carey depends on the internet and directory assistance to conduct its business and secure customer reservations. As a result, Carey owns more than 100 domain names incorporating the CAREY® trademark, including CareyLimousines.com, CareyInternational.com, CareyInt.com, and eCarey.com.

5. Defendant Alexander Sandler operates a limousine business named Carey Limo International.

6. Sandler and his teenage daughter, Defendant Sima Sandler, have registered and/or control multiple domain names containing the Carey name, including CareyLimoInternational.com, CareyUS.com, and CareyGlobal.com. Each of these domain names link to a website for Carey Limo International.

7. Sandler has registered and/or controls two toll-free numbers containing Carey's name, the telephone number (888) CAREY-03, and fax number (888) CAREY-04. The telephone number appears at the bottom of each of Defendants' web pages along with the business name Carey Limo International.

8. Upon learning of the allegedly infringing domain names, Carey filed two domain name complaints against Sandler and his daughter which are currently pending before the National Arbitration Forum.

9. Since initiating the domain name actions, Sandler and his daughter have transferred their ownership of the domain name CareyGlobal.com to Defendant Alexander Kogan (their alleged cousin), and the domain names CareyLimoInternational.com and CareyUS.com to Oksana Sandler (another presumed relative).

ORDER – 2

10. Oksana Sandler recently registered the following domain names containing the Carey name: CareyInc.com, Cary-Inc.com, Carey-Corp.com, CarreyInternational.com, CarreyChaffeurs.com, CarreyGlobal.com, CarreyUS.com, and CarreyUSA.com.

11. Kogan has also recently registered domain names containing the Carey name, including Carey-Online.com, Carey-Web.com, and I-Carey.com.

12. Kogan also owns the domain names TLimo.com and LimousineInternational.com which link to websites for "Carey Limo International" and contain the allegedly infringing telephone and fax numbers.

13. At least two of Carey's customers claim to have been confused by Defendants' domain names. One of the customers called Carey to complain after having an allegedly threatening and abusive telephone conversation with a "Carey" employee, and receiving an e-mail with the message "Please put your license in your >>>, you will pay your bill. Thank You!" signed by "Alex@uscarey.com, www.limousineinternational.com." Carey later determined that the customer booked his limousine service through the website LimousineInternational.com, registered to Kogan.

14. The other customer called to complain about service she received in Denver and to dispute her bill. When Carey reviewed the disputed bill, it determined that the customer had booked her limousine service through "Carey Limo International."

### III. CONCLUSIONS OF LAW

1. The court has subject matter jurisdiction over the federal claims in this matter under 15 U.S.C. §§ 1116 and 1121; and 28 U.S.C. §§ 1331, 1332(a)(1) and 1338(a), (b). The court exercises supplemental jurisdiction over the Washington state law claims in this matter. 28 U.S.C. § 1367.

ORDER – 3

2. Injunctive relief, including a temporary restraining order, is available to plaintiffs who demonstrate violations of the Lanham Act. 15 U.S.C. § 1116(a); Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 835 (9th Cir. 2001).

3. To obtain a temporary restraining order, Carey must satisfy the test for issuing a preliminary injunction. Stuhlbarg Int'l Sales, 240 F.3d at 839 n.7 (noting that preliminary injunction and temporary restraining order standards are "substantially identical").

4. In a trademark case, a plaintiff is entitled to a preliminary injunction "when it demonstrates either (1) a combination of 'probable success on the merits' and 'the possibility of irreparable injury' or (2) the existence of 'serious questions going to the merits' and that 'the balance of hardships tips sharply in his favor.'" GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000) (quoting Sardi's Restaurant Corp. v. Sardie, 755 F.2d 719, 723 (9th Cir. 1985)).

5. At the preliminary injunction stage, likelihood of confusion is the central element of trademark infringement. GoTo, 202 F.3d at 1205. A plaintiff is "entitled to a preliminary injunction in a trademark case simply when it shows a likelihood of confusion." Id. at n.5.

6. Eight factors guide the court's analysis of likelihood of confusion:
    a. the similarity of the marks;
    b. the relatedness of the two companies' services;
    c. the marketing channel used;
    d. the strength of plaintiff's mark;
    e. the defendant's intent in selecting its mark;
    f. evidence of actual confusion;
    g. the likelihood of expansion into other markets; and

ORDER – 4

   h. the degree of care likely to be exercised by purchasers.

Id. (citing <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348 (9th Cir. 1979)).  In the context of the internet, the three most important factors are (a)-(c).  <u>Id</u>.

7. The court finds that Carey has demonstrated a strong likelihood of confusion. Defendants operate a rival business providing similar services (chauffeured limousines) that incorporates the Carey name into its business name, domain names, and telephone and fax numbers.  <u>Brookfield Communications, Inc. v. West Coast Entm't Corp.</u>, 174 F.3d 1036, 1055-56 (9th Cir. 1999) (likelihood of confusion follows as a "matter of course" where virtually identical marks are used with identical products or services); <u>Kelley Blue Book v. Car-Smarts, Inc.</u>, 802 F. Supp. 278, 294 (C.D. Cal. 1992) (finding likelihood of confusion between plaintiff's BLUE BOOK trademark and defendants' phone numbers "1-900-BLU-BOOK" and "1-800-BLUE-BOOK").  Both Carey and the Defendants rely on the internet and telephone directories to attract customers.  The strength of the CAREY® mark is evidenced by its continuous use for multiple decades.  Kessler Decl., Exh. 1 (suggesting first use on Feb. 1, 1939); see <u>E. & J. Gallo Winery v. Gallo Cattle Co.</u>, 967 F.2d 1280, 1291 (9th Cir. 1992) (affirming finding that plaintiff's trademark was strong, based on long continuous use).  Defendants appear to have adopted the Carey name in an attempt to pass off their limousine services as those of Carey by adopting the business name "Carey Limos International," registering multiple domain names with the Carey name or minor variations (*i.e.,* "Carrey"), and using telephone and fax numbers with the Carey name.  At least two customers have been confused by the Defendants' websites and their confusion evidences that even executives who take care booking their limousine services, such as the one who received the email from the alleged

ORDER – 5

"Carey" employee, can be misled. Thus, all of the applicable factors demonstrate that a strong likelihood of confusion exists.[1]

8. The court presumes irreparable injury will result based on Carey's showing of a likelihood of success on the merits of its trademark infringement claim. E.g., Brookfield, 174 F.3d at 1066.

9. When a party seeks an ex parte temporary restraining order, it must also demonstrate reasons for granting the order without notice to the other party. Fed. R. Civ. P. 65(b). Carey has satisfied these requirements by attempting to personally serve the Defendants and calling each of them at the numbers they listed on their registration forms for the domain names and at the advertised telephone numbers for Carey Limos International.

10. Having found that a likelihood of success on the merits of Carey's trademark claim warrants the issuance of an ex parte temporary restraining order, the court refrains from evaluating the merits of Carey's other federal and state law claims.

## IV. TEMPORARY RESTRAINING ORDER

Defendants and their representatives and employees, and any business entity under their control, including, but not limited to, Carey Limos International, are enjoined from:

1. Using the names, marks and telephone numbers of CAREY®, "Carey Limo International," "Carey Limo," (888) CAREY-03, (888) CAREY-04, and any other marks and/or trade names that are similar to CAREY, including, but not limited to, any variations or misspellings of the CAREY marks, in connection with rendering and/or advertising limousine or chauffeur-driven services;

---

[1] The seventh factor – likelihood of expansion into other markets – is "relatively unimportant" when the parties already compete in the same industry. Brookfield, 174 F.3d at 1060.

ORDER – 6

2. Registering, purchasing, selling, owning or transferring any domain name that contains the term Carey, whether alone or in combination with other words, including, but not limited to, any domain name with variations or misspellings of Carey, not including transfers of such domain names to Carey;

3. Securing any number and/or listing with any national, local or toll-free telephone carriers, either through the White Pages, Yellow Pages or directory assistance, under the name Carey or any variation or misspelling thereof, whether alone or in combination with other words;

4. Answering the phone as "Carey" or responding to telephone inquiries as "Carey."

Further, Defendants and their representatives and employees, and any business entity under their control, including, but not limited to, Carey Limos International, are ordered to:

1. Remove all content from the websites located at all domain names owned and/or controlled by Defendants containing the CAREY® mark including, but not limited to: CareyLimoInternational.com, CareyUS.com, CareyGlobal.com, CareyInc.com, Carey-Inc.com, Carey-Corp.com, CarreyInternational.com, CarreyGlobal.com, Carey-Online.com, Carey-Web.com, I-Carey.com, CarreyUS.com, and CarreyUSA.com;

2. Remove from websites located at the domain names NetworkLimo.com, LimousineInternational.com, Tlimo.com and from all other domain names owned and/or controlled by Defendants that do not contain the CAREY® mark, all content calculated or likely to confuse the public into believing that Defendants' limousine services have a connection with Carey, including, but not limited to, removing all references to Carey, "Carey Limo International," "Carey Limo," and

ORDER – 7

any other marks and/or trade names that are similar to Carey, and any variation or misspelling thereof;

3. Instruct all national, local, and toll-free carriers from whom Defendants have obtained the telephone and facsimile numbers (888) CAREY-03 and (888) CAREY-04 to temporarily disconnect and remove these numbers from directory assistance;

All parties shall appear in this court on Wednesday, August 10, 2005 at 1:00 p.m., to show cause why the court should not enter a preliminary injunction on the same terms as this temporary restraining order. Defendants shall contact the court at (206) 370-8920 as soon as possible to inform the court whether they will be appearing *pro se*, or be represented by counsel.

Carey shall deposit a $5,000 bond with the clerk of this court, conditioned to pay Defendants' reasonable costs and damages should it be found that this action has been wrongfully brought by Carey. Fed. R. Civ. P. 65(c). This order shall not take effect until Carey serves Defendants and deposits such bond with the court.

Dated this 2nd day of August, 2005.

JAMES L. ROBART
United States District Judge

ORDER – 8